[No. 43264.   En Banc.   January 9, 1975.]

JOSEPH N. BARNES *et al, Respondents,* v. WASHINGTON STATE COMMUNITY COLLEGE DISTRICT NO. 20 *et al, Appellants.*

*Slade Gorton, Attorney General, John E. Lamp, Assistant,* and *D. Roger Reed, Senior Assistant,* for appellants.

*Reese & Mitchell* and *John S. Biggs,* for respondents.

UTTER, J.—Plaintiffs Barnes, et al, are teachers in defendant district's community college. Until May 1973, each of them held positions as departmental chairmen in addition to their full time teaching duties. In that month they were informed that the chairmanships had been abolished in an administrative reorganization. They sought review of this "partial nonrenewal" of their contracts under the notice and hearing requirements of WAC 132T-06-080 and WAC 132T-06-090. Their request was denied. Plaintiffs then brought this suit against the district, seeking declaratory and injunctive relief. Their claim was and is that their chairmanships were tenured faculty appointments subject to nonrenewal only through procedures prescribed by stat-

ute and regulation, and that these procedures were not followed. The trial court granted their motion for summary judgment. The district appeals. We hold that the administrative positions held by plaintiffs were not protected by tenure and therefore reverse the trial court.

The problem posed by this case is essentially one of construction of several statutes in the Community College Act of 1967. As amended in 1969, it defined tenure as "a faculty appointment for an indefinite period of time . . ." (RCW 28B.50.851(1)), and provided that

> "Faculty appointment" shall mean full time employment as a teacher, counselor, librarian or other position for which the training, experience and responsibilities are comparable as determined by the appointing authority, except administrative appointments;

Laws of 1969, 1st Ex. Sess., ch. 283, § 33, p. 2776. In another section tenure was extended to faculty members appointed to administrative positions after the effective date of the act. RCW 28B.50.860. No tenure protection was provided, however, for teachers who had been appointed to administrative positions *prior* to the passage of the act.

In 1970 the definition of "faculty appointment" in RCW 28B.50.851(2) was amended, so that the subsection presently provides:

> (2) "Faculty appointment" shall mean full time employment as a teacher, counselor, librarian or other position for which the training, experience and responsibilities are comparable as determined by the appointing authority, except administrative appointments; *"faculty appointment" shall also mean department heads, division heads and administrators to the extent that such department heads, division heads or administrators have had or do have status as a teacher, counselor, or librarian;*

(Italics ours.) The language added in the 1970 amendment is the basis for plaintiffs' claim. They contend that the second clause of the subsection extends tenure to their positions as department chairmen. The trial court agreed. It decided that the language of RCW 28B.50.851(2) was unambiguous in its grant of "faculty appointment" status, and

therefore tenure, to administrators who are or have been teachers. It found support for this conclusion in the fact that tenure protection was given to administrators who had been teachers prior to the 1969 legislation in RCW 28B.50.868, as amended in 1970, which provides:

> All employees of a community college district, except presidents, who were employed in the community college district at the effective date of chapter 283, Laws of 1969 ex. sess. and who hold or have held a faculty appointment with the community college district or its predecessor school district shall be granted tenure by their appointing authority notwithstanding any other provision of RCW 28B.50.850 through 28B.50.869.

The court reasoned that the language added to RCW 28B.50.851(2) had to do something more or be rendered mere surplusage, and held that what it did was extend full tenure to administrators who were or had been faculty members, such as plaintiffs.

■ We cannot agree either that the language of the subsection unambiguously supports plaintiffs' position or that its context evinces a legislative intent to extend tenure beyond its heretofore recognized limits. The language, as amended, contains internal inconsistencies which at least make it ambiguous, and seem to militate against plaintiffs' interpretation. It provides that " 'faculty appointment' shall also mean department heads . . . to the extent that [they] have had or do have status as a teacher . . ." The prepositional phrase beginning "to the extent that" is adverbial and modifies and therefore limits the words "shall mean." Tenure, the limits of which are established by the definition of "faculty appointment," is only granted administrators to the extent that it was possessed by them in their former positions as teachers, counselors, or librarians. Had the legislature wished to grant them tenure in their separate roles as department heads or administrators it could have done so by simply adding those positions to the listing in the first clause of the subsection, or by substituting the word "if" for the words "to the extent that" in

the added language. This was not done, however, and it must be assumed that by using different terms the legislature meant to achieve a different result.

The "surplusage" argument relied upon by plaintiffs and accepted by the trial court does not compel a different result. True, RCW 28B.50.868, as amended in 1970, does seem to fully provide for the extension of tenure to previously promoted faculty members, and in light of this it is difficult to see what, if anything, the amendment to RCW 28B.50.851(2) was intended to add. RCW 28B.50.851 is, however, a definitional section, and RCW 28B.50.868 seems to be a catchall provision designed to cover any circumstances that other sections might miss and thereby avoid inconsistency or unfairness. It does no great violence to the statutory scheme to hold that such provisions do not necessarily add anything substantive to the act. Further, under the reading we have given RCW 28B.50.851(2) it does accomplish something. Without the limitation it places on the definition of "faculty appointment," RCW 28B.50.868 would seem to dictate that administrators be granted full tenure in their positions as administrators. The language added to RCW 28B.50.851(2) clarifies this by indicating that tenure should be granted only to the extent of the previous position as teacher, counselor or librarian.

■ We would be less than candid if we indicated that the meaning of these statutes is completely clear. The interpretation we have given them is the most reasonable to us in light of their language and apparent purpose. Most importantly, this interpretation is consistent with the accepted purpose of tenure, which is the primary concern of these statutes. The most authoritative source regarding the meaning and purpose of tenure is the American Association of University Professors. In 1940, the Association issued a Statement of Principles on Academic Freedom and Tenure which made clear that the purpose of tenure is to protect the faculty member in the classroom and in scholarly research. As quoted in C. Byse & L. Joughin, *Tenure in*

*American Higher Education: Plans, Practices, and the Law* (1959), at 172-73:

> Institutions of higher education are conducted for the common good and not to further the interest of either the individual teacher or the institution as a whole. The common good depends upon the free search for truth and its free exposition.
>
> Academic freedom is essential to these purposes and applies to both teaching and research. Freedom in research is fundamental to the advancement of truth. Academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher in teaching and of the student to freedom in learning. It carries with it duties correlative with rights.
>
> Tenure is a means to certain ends; specifically: (1) Freedom of teaching and research and of extramural activites, and (2) A sufficient degree of economic security to make the profession attractive to men and women of ability. Freedom and economic security, hence tenure, are indispensable to the success of an institution in fulfilling its obligations to its students and to society.

(Footnote omitted.) These purposes would not be served by extending tenure to department heads in their positions as such, and administrative considerations militate against such an extension. In a statement adopted in 1966, the American Association of University Professors said:

> The chairman or head of a department, who serves as the chief representative of his department within an institution, should be selected either by departmental election or by appointment following consultation with the members of the department and of related departments; appointments should normally be in conformity with department members' judgment. The chairman or department head should not have tenure in his office; his tenure as a faculty member is a matter of separate right.

*AAUP, Policy Documents and Reports* 38 (1973).

In *Zumwalt v. Trustees of California State Colleges*, 33 Cal. App. 3d 665, 109 Cal. Rptr. 344 (3d Dist. Ct. App. 1973), the court noted the AAUP position in determining that tenure does not extend to the office of department

chairman under California law. That case was ultimately founded on the interpretation of a California regulation, as ours is on our reading of our statutes. Basic to the outcome in *Zumwalt* and this case, however, is the conviction that the legislature would not, in less than clear terms, alter so substantially the established scope of tenure.

The judgment is reversed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.